# EXHIBIT "A"

CAUSE NO.   201975104

RECEIPT NO.                          75.00        C01
**********                          TR # 73684885

PLAINTIFF: WALDHOFF, JARED                           In The  55th
            vs.                                      Judicial District Court
DEFENDANT: CITY OF HOUSTON (D/B/A HOUSTON AIRPORT SYSTEM)   of Harris County, Texas
                                                     55TH DISTRICT COURT

CITATION

THE STATE OF TEXAS
County of Harris

By _Ester_

TO: CITY OF HOUSTON (D/B/A HOUSTON AIRPORT SYSTEM) BY SERVING THE CITY
    SECRETARY FOR THE CITY OF HOUSTON ANNA RUSSELL
    OR WHEREVER SHE MAY BE FOUND
    901  BAGBY OFFICE P101    HOUSTON TX  77002
    Attached is a copy of PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

This instrument was filed on the 11th day of October, 2019, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you.

TO OFFICER SERVING:
    This citation was issued on 14th day of October, 2019, under my hand and
seal of said Court.

Issued at request of:                    MARILYN BURGESS, District Clerk
HARGER, WILLIAM GRIFFIN                   Harris County, Texas
704  MAIN STREET                          201 Caroline, Houston, Texas 77002
RICHMOND, TX  77469                       (P.O. Box 4651, Houston, Texas 77210)
Tel: (281) 202-6000
Bar No.: 793898                           Generated By: CUERO, NELSON  7MM//11355268

---

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock ____.M., on the _____ day of _____, _____.

Executed at (address) _____ in

_____ County at _____ o'clock ____.M., on the _____ day of _____,

_____, by delivering to _____ defendant, in person, a

true copy of this Citation together with the accompanying _____ copy(ies) of the Petition

attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this _____ day of _____, _____.

FEE: $_____                          _____

                                        _____ of _____County, Texas

_____        By _____
         Affiant                                         Deputy

On this day, _____, known to me to be the person whose
signature appears on the foregoing return, personally appeared. After being by me duly sworn,
he/she stated that this citation was executed by him/her in the exact manner recited on the
return.

SWORN TO AND SUBSCRIBED BEFORE ME, on this _____ day of _____, _____.

                                        _____
                                                    Notary Public

N.IHT.CIT6.P                *73684885*

10/11/2019 5:26 PM
Marilyn Burgess - District Clerk Harris County
Envelope No 37603681
By: Nelson Cuero
Filed: 10/11/2019 5:26 PM

# 2019-75104 / Court: 055

## CAUSE NO. _____

| | | |
|---|---|---|
| **JARED WALDHOFF** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **V.** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| **CITY OF HOUSTON d/b/a HOUSTON** | § | |
| **AIRPORT SYSTEM and HOUSTON** | § | |
| **AIRPORT SYSTEM** | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION
## AND REQUEST FOR DISCLOSURES

JARED WALDHOFF ("Plaintiff" or "Waldhoff") files this Plaintiff's Original Petition and Request for Disclosures (the "Petition") complaining of the City of Houston d/b/a Houston Airport System and Houston Airport System ("Defendant" or "HAS").

Among other things, this Petition brings questions of law and other challenges to HAS' February 1, 2016 Operating Instruction (the "O.I.")[1], a Notice of Violation issued to Plaintiff by HAS – specifically violation no. 11082 – and the September 13, 2019 ruling by Montecella Flaniken, Adjudication Hearing Officer for the City of Houston, Municipal Courts Department, sustaining the alleged violation against Plaintiff.

In support of this petition, Plaintiff states the following:

### DISCOVERY CONTROL PLAN

1.      Discovery in this case shall be conducted under Level 2, Texas Rules of Civil Procedure Rule 190.1.

---

[1] A true and correct copy of the Houston Airport System Operating Instruction originally approved August 1, 2005 and revised February 1, 2016 is attached as *Exhibit A*.

2.      2.      At this point, Plaintiff seeks monetary relief over $200,000.00 but not more than $1,000,000.00, excluding court costs, prejudgment interest, and attorneys' fees, pursuant to Tex. R. Civ. P. 47(c)(4).

## PARTIES

3.      Waldhoff is an individual Texas resident who resides in Brazoria County, Texas.

4.      The City of Houston d/b/a Houston Airport System is a Texas municipality that can be served with citation and other process by serving The City Secretary for the City of Houston, Anna Russell, at 901 Bagby, Office P101, Houston, Texas 77002, or wherever she may be found. Service of process is requested.

5.      Houston Airport System is believed to be a division of the City of Houston. Pursuant to its O.I. IX. D. revised as of February 1, 2016, the Houston Airport System has appointed the Assistant General Manager for Security as its agent upon whom to serve process in a challenge to its Operating Instructions.  The address of the Houston Aviation System is 16930 JFK Boulevard, Houston, Texas 77032.  (Plaintiff has made numerous efforts to identify a name for this position, but two individuals at the Houston Airport System security office have informed Plaintiff that there is no such position, and there is none shown on their website.  Other calls to the Houston Airport System have resulted in several assurances that the information would be provided, but thus far it has not.)  Service of process is requested.

## JURISDICTION

6.      The amount in controversy is within the jurisdiction of this Court. The Court also has personal jurisdiction over Defendant because it is a Texas municipality that operates within this district.  Further, the challenged proceeding was an administrative proceeding, and HAS has

directed that any challenges "shall be heard in a civil court of competent jurisdiction in Harris County."  O.I. IX. D.

## VENUE

7.      Venue is proper in Harris County, Texas because all or a substantial part of the events or omissions made the basis of this lawsuit occurred in this county.  See, TEX. CIV. PRAC. & REM. CODE Section 15.002. Venue is also proper because HAS has submitted to this venue pursuant to O.I. IX. D.

## STATEMENT OF FACTS

The facts of this case are largely undisputed.

**A.      Plaintiff's employment.**

8.      Plaintiff is an airplane mechanic licensed by the Federal Aviation Administration and employed by Southwest Airlines for approximately two and one-half years.

9.      As a condition of his employment, Plaintiff is required to hold a Security Identification Direct Access (SIDA) badge issued by HAS.

10.      Without the SIDA badge, Plaintiff has been terminated from his employment with Southwest Airlines, and is permanently prohibited from working at any major airport in the Houston area, leaving him unable perhaps unable to support his family, as he is receiving medical treatment for colon cancer at M.D. Anderson.

11.      Plaintiff was issued a SIDA badge at the inception of his employment at Hobby Airport.  However, *he was never given a copy of the Operating Instructions which were used by HAS to revoke the badge.*

12.      The SIDA badge gave Plaintiff permission to work inside aircraft, which is considered part of the "sterile" area of the terminal -- meaning the areas of the terminal that can

only be reached by the general public after going through a TSA passenger screening checkpoint (the "sterile area") – without going through a TSA checkpoint.

13.     Plaintiff's workstation hub at Hobby Airport is located at the end of the terminal downstairs by gates 46, 47 and up. However, during the performance of his job, Plaintiff would often work in and around airplanes and jet bridges that required him to enter sterile areas of the terminal.  It should also be noted that before Mr. Waldhoff can reach this area, he and anything he is carrying has to be screened at a security checkpoint between the Southwest Airlines maintenance hangar and the terminal ramp area.

14.     In addition, Plaintiff and his fellow employees were permitted to use their SIDA badges go into the sterile area of the terminal for food and services without going through a TSA screening checkpoint. Indeed, both before and after the events described in this lawsuit, Southwest Airlines instructed employees that they could access the sterile portions of the terminal without going through TSA checkpoints to go to and use the food court, restaurants, shops and services inside the sterile areas of the terminal. Such entry into the sterile area of the terminal is not prohibited by the Houston Airport Operating Rules.  The presumed reason for this policy was that every mechanic is screened before he is allowed into the ramp area when coming there from the hangar.

15.     HAS was aware of Southwest Airlines' instructions to its employees and allowed – without objection – Southwest Airline employees to access the sterile area of the airport to purchase products and use airport services.  It is reasonable to assume HAS had no objection to this protocol because they are aware that airline mechanics are screened at a security checkpoint when coming from the hanger to the ramp (and because they hold a SIDA security badge).

16.     While the policy described above gave Southwest employees access to the sterile area, it did not exempt them from proceeding through the standard TSA passenger screening procedure prior to boarding an aircraft as a passenger on a flight. Therefore, Southwest employees intending to board a flight routinely transited the sterile area while proceeding to the TSA passenger screening checkpoint prior to boarding a flight as a passenger.

**B.     Plaintiff's entry through Door Y-1002 on September 5, 2019.**

17.     From the beginning of his employment at Hobby Airport, Door Y-1002 was a door that Plaintiff and his fellow Southwest Airlines employees often utilized to enter to sterile portion of the terminal for the purposes of getting food or other airport services, as well as transiting that area while proceeding to the TSA screening checkpoint prior to boarding a flight as a passenger.

18.     Plaintiff was scheduled to board a flight to Indianapolis, Indiana to visit his family on September 5, 2019 at approximately 8:40 a.m.

19.     Plaintiff worked at his position at Southwest Airlines on September 4, 2019 beginning at 10:15 p.m. through September 5, 2019 at 7:28 a.m.

20.     Plaintiff entered the Y-1002 door on September 5, 2019 soon after he clocked out.

21.     Plaintiff's intent was to proceed through the sterile area to the central TSA screening checkpoint before boarding his flight.

22.     On this particular day, there were two TSA checkpoint agents just inside of Door Y-1002.

23.     When Plaintiff entered the door, he explained to the TSA officers that he had just left work and was going to fly to Indianapolis. TSA then searched his bag and cleared it. Plaintiff asked if this TSA check was sufficient for him to board his flight. He was told that he still needed to proceed to the  TSA central checkpoint. TSA then allowed him to proceed through the sterile

area of the terminal to go to the central TSA passenger security checkpoint, just as he had intended to do.  No mention was made of any kind of violation or security breach.  The agents gave no indication that Mr. Waldhoff had done anything wrong.  However, it is interesting to note that *after* this encounter, a sign appeared on the ramp entrance side of Door Y-1002 which attempted to clarify the airport policy.

24.     Surveillance video showed that six (6) minutes after leaving the TSA checkpoint at Door Y-1002 Plaintiff entered TSA's central passenger security checkpoint with the same bag that was checked and cleared by TSA at the Door Y-1002 checkpoint.

25.     Plaintiff did not board his flight until after he passed through the central TSA security checkpoint and proceeded again through the sterile area to the departure gate.

**C.     Plaintiff's Alleged Violation of the O.I.**

26.     Plaintiff was summoned to an HAS security office on September 9, 2019. When he arrived at the office, he was issued HAS Notice of Violation #11082 charging him with violating O.I. Violation 54 ("NOV 11082").  O.I. Violation 54 provides:

> An airline employee including, but not limited to, Flight Crew, Cabin Crew, mechanic or any other employee boarding or attempting to board an aircraft as a passenger or any individual not specifically designated or acting as an active crew member for the flight that accessed the sterile area through an access point other than a TSA screening checkpoint.

27.     At the time he was given the NOV 11082 on September 9, 2019, Plaintiff was pressured to agree to a hearing on the morning of September 13, 2019 – just four (4) days after the NOV was provided to him. Plaintiff objected because he had a treatment appointment at M.D. Anderson the morning of September 13 related to his colon cancer. Plaintiff was then told to come to a hearing on the afternoon of September 13, 2019 after his treatment.

28.     Plaintiff was never provided a copy of the O.I. or the procedures for the hearing. Plaintiff was never instructed that he needed to file an answer or a written contest or that he could get a lawyer and have a lawyer represent him at the hearing. Plaintiff was never given the alleged "due process" benefits of the O.I. regarding (1) 14 days to contest the charges, (2) the right to request a continuance,  (3) the right to subpoena witnesses on his behalf, (4) the right to cross-examine witnesses against him or (5) the right to object to evidence . Indeed, Plaintiff was never told whether the alleged violation was criminal, civil or administrative or the consequences of the charge against him being sustained, even though, if sustained, the consequence would be loss of his ability to work as an airline mechanic at any airport in Houston.

29.     At the hearing, Plaintiff was confronted with a Powerpoint presentation put together by HAS.  He had never seen the Powerpoint, and had no idea what to expect.  The HAS presentation also included video surveillance footage of his bag being inspected by the TSA agents at the checkpoint inside Door Y-1002, and, after the inspection, the TSA agents allowing him to proceed on through the sterile area to the main TSA passenger screening checkpoint.  However, the video presented by HAS did *NOT* show Plaintiff proceeding through the main TSA passenger screening checkpoint six (6) minutes after the TSA inspection at the checkpoint inside Door Y-1002.  By any objective standard, this was an intentional effort to mislead the hearing officer and manipulate the record of the hearing.   The presentation also included presentation to (and acceptance by) the hearing officer of unsworn statements by the TSA agents.  In addition to the statements being unsworn, Mr. Waldhoff obviously had no opportunity to cross examine his accusers, who were not even present at the hearing.

30.     Plaintiff's Southwest Airlines manager attended the hearing, and testified that the alleged violation his employee was being charged with was in fact a common practice among

Southwest Airlines personnel, and it was not fair to single out Mr. Waldhoff for severe punishment when he was unaware of violating any security "instructions" and had done nothing different thatn the rest of the employees.  The manager also noted that the door sign attempting to clarify the policy had been put up before the hearing—a fact acknowledged by the HAS representative.  Thus, HAS was fully aware of the vagueness of the "instruction," and lack of compliance by airline personnel, before the hearing took place.  The day after the hearing, the Southwest Airlines manager issued a memorandum to his employees that, for the first time, clearly articulated how to comply with the "instruction" from HAS.  See attached *Exhibit B*.  Unfortunately, by then it was too late for Mr. Waldhoff.

***31.***     ***It is undisputed that before boarding or attempting to board an aircraft as a passenger, Plaintiff accessed the sterile area of the airport through the main TSA passenger screening checkpoint.***

32.     A "TSA screening checkpoint" is not defined in the O.I.  Even so, Plaintiff first entered the sterile area through a TSA checkpoint inside of Door Y-1002.  After being allowed by TSA agents to proceed from the first TSA checkpoint through the sterile area, Plaintiff exited the sterile area and then reentered  it through the central TSA passenger screening checkpoint. Then Plaintiff boarded his flight as a passenger.

33.     Based on these undisputed facts, as a matter of law, Plaintiff did not violate O.I. Violation 54 under any plain reading of the O.I.

34.     After performing their own investigation, the TSA issued a "Warning Notice" to Plaintiff rather than seeking a civil penalty under Federal Regulations.  In spite of the "report" of the two TSA agents, after finding that Plaintiff submitted himself and his property "to TSA at the passenger screening checkpoint prior to boarding your flight," the government entity primarily

responsible for keeping the sterile area "sterile" found no violation of federal airport security laws. (See *Exhibit C*). The letter simply used boilerplate language suggesting that Mr. Waldhoff "may" have violated a regulation. *Id.*

35.     Contrary to the five (5) days actually permitted to Plaintiff, the O.I. provided that Plaintiff had 14 days to contest NOV 11082. (O.I. - IX.B.)

36.     The O.I. further provided that Plaintiff could only request a hearing reset if the request was made 5 days before the scheduled hearing. (O.I. – IX.G). Clearly, this was impossible, since HAS scheduled the hearing for four (4) days after the notice of violation was issued  Plaintiff actually had *less than* four 24-hour days' notice of a hearing, the outcome of which would determine if he could continue to work for his employer, or at any major airport in Houston, and which could result in the loss of his medical insurance while he was going through cancer treatments.

37.     The O.I. further provided that if Plaintiff wanted to compel witnesses to the hearing, he had to do so at least 10 days before the scheduled hearing. (O.I. - IX.J).  Clearly, this was impossible, since HAS scheduled the hearing for four (4) days after the notice of violation was issued.

38.     The face of NOV 11082 did not provide a hearing date for the alleged violation. As set forth above, Plaintiff was verbally coerced to attend a hearing just four (4) days after NOV 11028 was issued to him and without being informed of his legal rights, including any "due process" rights.

39.     Plaintiff submitted a statement to the HAS before the hearing contesting NOV 11028. A true and correct copy of Plaintiff's statement is attached as *Exhibit D*.  It should be noted

that Plaintiff's testimony at the hearing was required to be under oath, while the testimony of the witnesses offered by HAS against him was not.

40.     HAS obtained and used at the hearing unsworn statements from the two TSA agents encountered by Plaintiff at the initial TSA checkpoint just inside of Door Y-1002. True and correct copies of the two statements from the TSA employees are attached as *Exhibits E* and *F*. Again, not only were the statements unsworn, but Plaintiff had no opportunity to cross-examine the witnesses, who were not even present at the hearing.

41.     It is unclear under the O.I. whether the charges against Plaintiff are criminal, civil or administrative. Regardless, the consequences of the alleged violation being sustained is severe – it prevents Plaintiff's employment at any airline at any Houston airport and possibly at other airport in the United States.  (HAS has a policy that, if your security badge has ever been revoked by any airport security office, you cannot be issued a security badge at any HAS airport.)

42.     Yet, just four days after NOV 11082 was issued, a contract hearing officer whose compensation is paid by HAS, and who was at Hobby Airport at the request of HAS, sustained the violation based on hearsay, written unsworn statements and documents, without giving Plaintiff: (1) 14 days to contest the hearing, (2) time or a chance to obtain an attorney, (3) any type of formal or informal arraignment, (4) time to subpoena witnesses, (5) time to request a continuance, (6) time to take any discovery or (7) a chance to cross-examine the witnesses against him.

43.     If not reversed, the ruling of the hearing officer – at a hearing that: (1) did not follow the requirements of the O.I., (2) did not provide Plaintiff due process and (3) contradicted the undisputed evidence before her -- could end Plaintiff's career, preventing him from supporting his family and causing the termination of his health insurance (or make it impossible for him to afford

health insurance) at a time just after he was diagnosed with and is getting treatment for colon cancer.

44.     This severe and harsh result was not only unwarranted based on the evidence, it was rendered in violation of the procedures set out in the O.I. and was rendered without providing Petitioner due process of law in violation of the United States and Texas constitutions.

## CAUSES OF ACTION

**CAUSE OF ACTION NO. 1:**

**AS A MATTER OF LAW, PLAINTIFF'S ACTIONS DID NOT VIOLATE THE OPERATING INSTRUCTIONS.**

46.     Rule 54 prohibits the following:

> An airline employee including, but not limited to, flight crew, mechanic, cabin crew or any other employee **boarding or attempting to board** an aircraft as a passenger or any individual not specifically designated or acting as an active crew member for that flight that accessed the sterile areas **through an access point other than a TSA screening checkpoint.**

O.I. Violation 54 (emphasis added).

47.     The undisputed evidence before the hearing officer was that Plaintiff boarded his flight only *after* he went through two TSA checkpoints. There was no evidence that Plaintiff boarded or attempted to board an aircraft as a passenger through an access point other than a TSA passenger screening checkpoint.   In fact, every shred of evidence shows exactly the contrary.

48.     Indeed, when Plaintiff proceeded into the sterile area of the airport on September 5, 2019, he did so with the permission of TSA officers, and after having been through two (2) security screening events. Moreover, the TSA -- following its investigation – found that Plaintiff went through a TSA "passenger screening checkpoint prior to boarding [his] flight." This was in fact the *third* security screening Mr. Waldhoff went through before proceeding to board an

aircraft as a passenger—certainly more than any other passengers on the flight had received.

49.     Therefore, as a matter of law, there is no evidence that Plaintiff violated O.I. Violation 54 by boarding or attempting to board an aircraft as a passenger until after he had passed through a TSA screening checkpoint. Accordingly, as a matter of law there was no basis to revoke Plaintiff's SIDA badge.

## CAUSE OF ACTION NO. 2

## VIOLATION OF PLAINTIFF'S PROCEDURAL CONSTITUTIONAL DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 19 OF THE TEXAS CONSTITUTION.

50.     Plaintiff reasserts and incorporates by reference into this cause of action all of the allegations set forth in all the paragraphs above and below.

51.     The Fourteenth Amendment provides due process protection from state action by stating that no State shall "deprive any person of life, liberty, or property, without due process of law." Similarly, Article I, § 19 of the Texas constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." The fundamental requirement of due process of law is the opportunity to be heard. The opportunity must be full, fair, and not illusory in nature.

52.     HAS held a hearing on September 13, 2019 on a notice of violation issued September 9, 2019. Following the hearing, Plaintiff was permanently stripped of his SIDA badge which caused Plaintiff (1) to lose his employment, (2) prevents him from obtaining a job at any other major Houston airport and possibly any other major airport in the United States, and (3) could result in loss of healthcare coverage and render him unable to replace it at a time just after he was diagnosed and began treatment for colon cancer.

53.     HAS's hearing and hearing procedures violated Plaintiff's rights under the above constitutional provisions in the following ways, among others:

1.  According to the O.I., it was created, in part, to provide a means of providing for due process to those charged. However, Plaintiff was not provided a copy of the O.I. either before the hearing on NOV 11028 or during the hearing. The O.I is not a public record to Plaintiff's knowledge even though it purports to provide "the system of enforcing compliance with various laws, ordinances, policies, procedures, rules and regulation of or pertaining to the [HAS]" (O.I. I.A.) Moreover, HAS at no time notified Plaintiff in any fashion of his rights or HAS's obligations under the O.I. for the notice and conduct of violation hearings.

2.  Regarding the violation alleged against Plaintiff, HAS did not follow its own procedures as mandated in the O.I. or provide to Plaintiff the due process protections specified in the O.I. By way of example, both the form language on the back of NOV 11028 and the O.I. required HAS to allow Plaintiff 14 days to contest the charges against him. Yet, knowing that Plaintiff did not know his rights as specified in the O.I., HAS coerced Plaintiff to attend a hearing just 4 days after NOV 11028 was served on Plaintiff and – as HAS was aware at the time it set the hearing -- the hearing was held on the afternoon following Plaintiff's colon cancer treatment at M.D. Anderson. By further example, the form language on the back of NOV 11028 states that the ID Badging Office will "at the time of filing of your Notice of Contest supply you with a copy of the hearing procedures and rules therefore." HAS did not provide the hearing procedures and rules to Plaintiff. By way of further example, the O.I. permitted Plaintiff to seek a continuance of the hearing, but only if he did so 5 days before a scheduled

hearing. HAS did not inform Plaintiff of this right. Knowing that Plaintiff did not know his rights as specified in the O.I, HAS improperly set and compelled Plaintiff to a hearing on NOV 11028 just 4 days after NOV 11028 making his timely request for a continuance impossible. By way of further example, the O.I. permitted Plaintiff to compel the attendance of witnesses if notice was given 10 days before the hearing. HAS did not inform Plaintiff of this right. Knowing that Plaintiff did not know his rights as specified in the O.I, HAS improperly set and compelled Plaintiff to a hearing at a time making his timely request to compel the attendance of witnesses impossible. By way of further example, HAS's failure to give Plaintiff at least 14 days' notice of a hearing, deprived Plaintiff of needed time to obtain legal advice, prepare his defense, take discovery, compel witnesses or locate and read a copy of the O.I. Instead, HAS improperly and unnecessarily compelled a quick, untimely hearing, knowing that Plaintiff was undergoing cancer treatments hours before the hearing, to prevent Plaintiff from learning and exercising his rights and getting prepared for the hearing. By way of further example, the O.I. provided that Plaintiff could be represented by an attorney at the hearing (O.I. X. L). Yet, HAS did not inform Plaintiff of that right, and instead, improperly set a hearing intentionally timed to prevent Plaintiff from having adequate time to obtain any due process. In all, HAS clearly acted in bad faith and with unnecessary haste to deprive Plaintiff of due process and ultimately his SIDA badge, his job, his livelihood and his health insurance.

3. The O.I. further denied Plaintiff due process because all decisions of fact or application of the facts governing the dispute are determined in the sole discretion of a non-elected "contract" judge paid by HAS (see O.I. IX Q). Yet, the O.I. provides that *the contract*

*judge's fact findings and sanction are final and non-appealable* (see O.I IX. Z.). A system where HAS (or the City of Houston) pays a contract judge to make findings on complaints filed by HAS that can deprive a party of his constitutional property and liberty interests, but cannot be appealed or reviewed under any standard by a judge whose job is not dependent on HAS or the City of Houston, violates Plaintiff's due process rights under the constitutional provisions set out above. Bias and conflict of interest are inherent in and constitutionally detrimental to this process.

4. The O.I. further denied Plaintiff due process because it expressly forbids the use of formal rules of evidence at hearings (see O.I. IX.R), yet allows the hearings officer to deprive Plaintiff of his property rights and liberty without any right to appeal factual determinations or sanctions. This is not due process of law.

5. The O.I. further denied Plaintiff due process because it allows HAS to deprive Plaintiff of his property and liberty rights without allowing Plaintiff to take any discovery (see O.I IX. S) and without requiring the government to provide exculpatory evidence to the Plaintiff before a hearing that takes from him his fundamental property and liberty rights.

6. Plaintiff's due process was denied because the hearings examiner considered unsworn statements from interested witnesses aligned with HAS and not present at the hearing, even though the O.I. required that "[i]n any and all hearings, all witnesses shall testify under oath or affirmation with penalty of perjury." (O.I. IX V). To the extent that the hearings officer allowed unsworn statements to be used against Plaintiff at such a critical hearing, Plaintiff was unconstitutionally denied his right to confront and cross-examine the witnesses against him.

54.     What is clear is that HAS intentionally took advantage of Plaintiff's lack of knowledge of the O.I. and the procedural and legal protections theoretically available to him to a grossly unfair degree. HAS's actions were not aimed to "protect" the airport, but to deprive Plaintiff of his procedural due process rights and then his substantive due process rights and his ability to make a living without justification.  His property and liberty rights protected by the U.S and Texas Constitutions were taken by a state actor without due process of law.

**CAUSE OF ACTION NO. 3**

**VIOLATION OF PLAINTIFF'S SUBSTANTIVE CONSTITUTIONAL DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 19 OF THE TEXAS CONSTITUTION.**

55,     Plaintiff reasserts and incorporates by reference into this cause of action all of the allegations set forth in all the paragraphs above and below.

56.     The O.I. violates Plaintiff's substantive due process rights under above constitutional provisions in the following ways, among others: O.I. Violation 54 is unconstitutionally vague in that it did not give Plaintiff fair notice of what conduct by him was forbidden or required.

    a. O.I. Violation 54 is unconstitutionally vague and ambiguous preventing Plaintiff from understanding what activity might cause a violation of that provision.  That this was the case is clearly supported by the fact that (1) days after the incident on September 5, 2019, HAS attempted to clarify the policy by putting a sign on the ramp side of Door Y-1002, and (2) the day after the hearing, Southwest Airlines issued a memorandum to all employees who worked in the area clarifying and explaining the policy.  *Exhibit B*, Southwest Airlines memorandum.

b. O.I. Violation 54 is so standardless that even TSA was confused about what it meant. At the time of the incident, the TSA agents gave Plaintiff permission to do what later resulted in a Notice of Violation several days later. If they knew it was a rule violation at the time, why did they permit it? It was their job to prevent any violation of the security measures at the airport, especially any that would affect access to the "sterile area." Further, TSA performed their own investigation of the incident, and did not find that Plaintiff had violated any security rules.

c. O.I. Violation 54 is so standardless that even the airlines did not understand it, which resulted in widespread activity in "violation" of the way HAS apparently interpreted the language. This, in turn, encouraged seriously arbitrary and discriminatory enforcement, and prevented Plaintiff an honest and reasonable opportunity to vindicate himself from the government's claims. HAS's determination that Plaintiff violated O.I. Violation 54 is an arbitrary abuse of power.

d. The application of O.I. Violation 54 to Plaintiff deprived him of his property and liberty, including his right to employment and to make a living without due process of law.

e. Government deprivation to Plaintiff of his SIDA badge further injured Plaintiff's good name, reputation, honor and integrity without a true opportunity for him to be heard and answer the charges against him.

## CAUSE OF ACTION NO. 4

## VIOLATION OF 42 U.S.C. SECTION 1983.

57. Plaintiff reasserts and incorporates by reference into this cause of action all of the allegations set forth in all the paragraphs above and below.

**42 U.S.C. Section 1983 provides in pertinent part:**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. Section 1983.

58.     Here, the conduct complained of was committed by a person or persons acting under color of state law and the conduct deprived Plaintiff of a federally protected right.  As a result of the violation of Plaintiff's due process rights by HAS and the City of Houston, Plaintiff has been damaged in an amount within the jurisdiction of this Court. Plaintiff asks the Court to enter judgment against HAS and the City of Houston to compensate Plaintiff for his damages

## REQUEST FOR DISCLOSURES

59.     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendant is requested to disclose, within fifty (50) days of service of this Request the information or material described in Rule 194.2(a)-(i).

## PRAYER

60.     WHEREFORE, Jared S. Waldhoff prays that Defendants The City of Houston and HAS be served with citation to appear and answer and that upon final trial, Plaintiff be granted judgment for all other and further relief, special or general, legal or equitable, as Plaintiff may be shown to be justly entitled to receive.  Plaintiff further prays for damages in an amount to be determined by a jury, as well as reimbursement of reasonable and necessary attorneys' fees and legal costs.

Respectfully submitted,

WILLIAM G. HARGER & ASSOCIATES, PLLC

*[signature]*

William G. Harger
SBOT 00793898
704 Main Street
Richmond, Texas 77469
(281) 202-6000
(281) 715-4343 (fax)
harger@hargerlaw.com

Bradley W. Hoover
SBOT 09965700
Bradley W. Hoover P.C.
937 E. Mulberry Street
Angleton, Texas 77515
Telephone:  979-583-9663
Facsimile:  888-651-5317
E-mail: bhoover@bradleywhoover.com

**COUNSEL FOR PLAINTIFF
JARED S. WALDHOFF**

## 2019-75104 / Court: 055



HOUSTON AIRPORT SYSTEM

**Operating Instruction**

| TITLE | OI Category | No. 05-03 |
|---|---|
| **Tenant Violations - Offenses, Charging Instrument, Due Process Provisions** | Date Original Approved: August 01, 2005 |
| Authorized Signature: _Mario C. Diaz, Director of Aviation_ | Revised Date: February 1, 2016 |

### I. PURPOSE

A. To explain the rationale of the system of enforcing compliance with various laws, ordinances, policies, procedures, rules and regulations of or pertaining to the Houston Airport System (HAS), including, but not limited to, the Airport Security Plan (ASP), Organization Policy & Procedures (OPPS), Airport Operating Procedures (AOP) and Airport Security Manual and/or Operating Instructions (O.I.).

B. To identify the persons authorized to issue Notice(s) of Violation(s), which is the charging instrument in the Houston Airport System (HAS) for O.I. and other administrative violations.

C. To identify violations, including, but not limited to the specific violations enumerated herein.

D. To assign consequences to such violations.

E. To provide a means of providing for due process to those charged.

### II. POLICY BASIS

Title 49 Code of Federal Regulations Parts 1540 & 1542, Airport Security Plan, Title 14 Code of Federal Regulations Part 139, Chapter 9 of the City of Houston Code of Ordinances, Houston Airport System Operating Instruction 05-02

### III. BACKGROUND

A. HAS, along with various federal, state and local governmental bodies, including administrative bodies, has developed, and continues to develop, various laws, policies, procedures, rules and regulations that are deemed reasonable and necessary for the safe, efficient and secure operation of the Houston Airport System (HAS).

1. At the Houston Airport System there are three enforcers of these laws, ordinances, policies, procedures, rules and regulations:

   a. The Airport Operations and Airport Security Sections, as designated by the Airport General Manager, are the primary Sections responsible for enforcement of security, non-security, safety, and operations related laws, ordinances, policies, procedures, rules and regulations; and

   b. Law Enforcement Officers-Law Enforcement Officers only have the authority to enforce criminal laws and not administrative or civil law nor the administrative or civil counterpart of any criminal law.

   c. The Section Directors may designate those within their Sections who are authorized to enforce non-criminal and administrative violations, and/or the administrative or civil counterpart of any criminal law, i.e. issue Notices of Violation, by either name or by their operating title class, and any designated by operating title class shall include any and all of those becoming employed in


PETITIONER'S EXHIBIT A

Page 1

OI 05-03    Tenant Violations – Offenses, Charging Instrument,
Due Process Provisions

said operating title class after the date of designation, as well as, those in any operating title class that is named as a successor to a prior operating title class.

    d.  The Airport General Manager, as he/she deems necessary, may designate any other section with the responsibility of the enforcement of security, non-security, safety, and operations related laws, ordinances, policies, procedures, rules and regulations.

2.  The means of notifying an individual or an organization that they have violated an administrative or civil law, policy, procedure, rule and/or regulation is by means of issuing a charging instrument called an NOV or Notice of Violation.  This form may be used for either issuing a warning or for formal charging. (See Attachment #1)

3.  This O.I. provides periods of time and a procedure in which to file a contest and a procedure for a fair and impartial hearing.

4.  Besides a general offense of violating a law, ordinance, policy, procedure, rule or regulation, specific offenses are listed herein so as to provide the HAS Community a clearer view of some of the areas that the Community needs to concentrate in resolving for the safety, security and efficiency of the HAS airports.

5.  This O.I provides a procedure to follow the NOV from issuance through completion of the consequences and to allow for better tracking of the NOV history of each individual and sponsoring organization's sponsored individuals.

6.  The title to any HAS position stated in this O.I. or any other O.I. related to ID Badging may be changed by posting the change in the public area at the main ID Badging Office at any HAS Airport affected thereby.

## IV.  POLICY APPLICABILITY

A.  This (O.I) applies to any person or entity who uses, desires to use, or should be using, the HAS Airport Security Section ID Badging system and/or Access Control System at any one or more of the HAS airports or facilities, employees of HAS who are governed by other HAS and City Of Houston ordinances, rules and regulations.

B.  This (O.I), by this paragraph, does hereby extend and apply O.I. 05-02 (Security Access Control System & ID Badging) to any person or entity who uses, desires to use, or should be using, the HAS Airport Security Section ID Badging system and/or Access Control System at any one or more of the HAS airports or facilities, employees of HAS who are governed by other HAS and City Of Houston ordinances, rules and regulations.

C.  This O.I. and O.I. 05.02 as applicable per airport, also applies to airline crews, airline mechanics and others who are allowed access to restricted or controlled areas based upon identification or access media issued by their employers (included in the definition of "HAS authorized ID Badges") and who are not otherwise required to possess an HAS issued ID Badge shall be required to submit to and undergo the same sanctions as if they had an HAS issued ID Badge and failure to submit to and undergo such sanctions for violations shall make them a trespasser after warning and subject to being so charged under the Penal Code of the State of Texas.

D.  This O.I. and O.I. 05.02 as applicable per airport, also applies to any individual who's employed at HAS owned, leased or controlled property for the purpose of providing any work, goods or services to HAS or any of its contractors, subcontractors, lessees, concessionaires, etc. and in so providing said work, goods

OI 05-03   Tenant Violations – Offenses, Charging Instrument,
Due Process Provisions

or services enters into any controlled or restricted area of such HAS owned, leased or controlled is required to obtain an HAS issued ID Badge. Individuals employed at all locations requiring a HAS ID badge shall be required to submit a completed HAS badge application to a HAS Badging Office prior to being authorized to work in a controlled or restricted area. These individuals may only be escorted after submitting a completed badge application to HAS Badging Office.

Individuals denied an HAS ID badge due to disqualifying criminal crimes and conditions prohibiting such issuance (O. I. 05-02 Attachment A) or have their HAS ID badge privileges suspended may not be employed or provide goods or services at any HAS owned, leased or controlled property including public areas. The individuals described in this subparagraph shall make them a trespasser after warning and subject to being so charged under the Penal Code of the State of Texas.

## V.   RESPONSIBILITY

A.  It is the responsibility of each individual and the tenant or other sponsoring entity and/or the party to whom they are providing work, goods or services, jointly and severally, to ensure that they and/or those sponsored or utilized by them are fully aware of the regulations, violations, penalties, and enforcement procedures contained in this (O.I), as well as, all other applicable laws, ordinances, rules and regulations, **before starting work and/or providing work, goods or services at an HAS airport – lack of knowledge or understanding is not an excuse nor a defense.** It shall be the responsibility of all above mentioned are kept advised of all changes and revisions to the regulations, violations, penalties, and enforcement procedures contained in this (O.I) and other applicable laws, ordinances, rules and regulations.

B.  It is the responsibility, duty and obligation of each and every individual to whom an ID Badge is issued, to know the limitations of their access, the laws, ordinances, policies, procedures, rules and regulations governing access, safety and security at the HAS airports and to timely and faithfully carryout their duties and obligations to the same, including, but not limited to, obeying each and every law, policy, procedure, rule and regulation and to strictly avoid any violation(s) of the same and by acceptance and/or retention of an ID Badge they represent that they have complied with these responsibilities, duties and obligations.

## VI.   DEFINITIONS

A.  Wherever an "Attachment", "Form" or "Map" is referred to anywhere in this O.I., they are provided for your convenience only as a general assistance and do not constitute a legal description. The current "Attachment", "Form" or "Map" can be obtained from the HAS Airport Security Section.

B.  The use of bolding, italics, underlining or other means of emphasizing a word or words is merely an aid to bring that portion to the reader's attention and does not denigrate the status or importance of any other word, words, sentences or paragraphs nor reduce their being mandatory in nature where appropriate.

C.  Word and Phrase Definitions:

1.  Airport Identification Badge (ID Badge): Any single identification media or combined identification media and access control media which is, and does always remain, the property of the Houston Airport System and is issued by HAS to provide identification, authorization, and access to restricted and/or controlled airport areas and other HAS facilities. Anytime the term "ID Badge" is used, it is referring to an ID Badge issued by HAS, Airport Security ID Badging, unless otherwise specifically noted. The term shall also include any medallions, etc. designated and authorized by HAS to be attached to the ID Badge.

2.  Airport General Manager: Is the person designated as such by the Houston Airport System for each HAS Airport. The term "Airport General Manager" shall include the person designated by the Airport General

Manager or by the Director of Aviation as the Acting or Interim Airport General Manager, when the Airport General Manager is on leave (vacation, city business, sick leave, FMLA, etc.) or unable or unavailable to fulfill their normal duties.

3. <u>Airport Security Coordinator (ASC):</u> The Primary Airport Security Coordinator is the person that occupies the position as defined in 49 Code of Federal Regulations (CFR) 1542.3 and as designated in the Airport Security Plan. The "Primary Airport Security Coordinator", as used herein, is the Airport Security Manager. The Airport Security Coordinator for ID Badging, if any, is the person who is the Head Supervisor for the ID Badging Section or any successor title thereto, i.e., it is the person that is the highest ranking individual for an ID Badging Office. The Airport Security Coordinator for the Security Section, if any, is the person holding that operational time.

4. <u>Airport Security Manager (ASM):</u> Is the person so designated in that position by the General Manager of the airport. The term "Airport Security Manager" shall include the person designated by the Airport Security Manager as the Acting or Interim Airport Security Manager, when the Airport Security Manager is on leave (vacation, city business, sick leave, FMLA, etc.).

5. <u>Air Operations Area (AOA):</u> A portion of an airport, specified in the airport security program, in which security measures specified in Part 1540 are carried out. This area includes aircraft movement areas, aircraft parking areas, loading ramps, and safety areas, for use by aircraft regulated under 49 Code of Federal Regulations (CFR) Part 1544 or 1546, and any adjacent areas (such as general aviation areas) that are not separated by adequate security systems, measures, or procedures. Portions of the AOA may concurrently have more restrictive and controlled designations. The AOA is more specifically delineated in attachments to the Airport's ASP.

6. <u>Airport Security Plan (ASP):</u> An airport's security program developed for and approved by the Transportation Security Administration (TSA) under the provisions of 49 CFR XII Part 1542.101. The Airport Security Plan is sometimes referred to as the Airport's Security Program.

7. <u>Airport Tenant Security Program (ATSP):</u> The agreement, if applicable, between the airport operator and an airport tenant that specifies the measures by which the tenant will perform security functions, and approved by TSA, under Part 1542.113 of 49 CFR Chapter XII.

8. <u>Apron Areas/Ramps:</u> Any area at an HAS airport where aircraft operate or park without being under direct control of the Air Traffic Control Tower, excluding corporate hanger areas, Fixed Based Operator (FBO) areas, and general aviation areas. Access to apron areas is restricted for security/safety reasons as defined in TSA 49 CFR 1540 & 1542, 1544 and 1546 and/or other applicable laws, rules and regulations.

9. <u>Authorized ID Badge:</u> Includes not only HAS issued ID Badges, but also, the ID Badges and access media of airline crews, airline mechanics or others who are allowed access to restricted or controlled areas based upon identification or access media issued by their employers and who are not otherwise required to possess an HAS ID Badge.

10. <u>Authorized Signatory Authority:</u> Is a person authorized by an employer or sponsoring company, and approved by an HAS ID Badging Office, to sign forms, including but not limited to Security Clearance Requests, Badge Renewal Requests, Key Requests, and PIN Requests, for individuals employed by or being sponsored for an HAS ID Badge.

11. <u>Badging & Access Office:</u> The HAS Airport Security ID Badging & Access Office Section that is primarily responsible for reviewing, approving, issuing, accounting to TSA for, and/or governing authorized ID Badges, Keys, PIN's and other access media. This Office is also responsible for Criminal History Records Check (CHRC)s, other security background checks, designation, assigning and entry of access rights, programming and deprogramming ID Badges, PIN data, etc. into the HAS access control computer system. ID Badges, PIN's and other media are issued by the Badging & Access Office located

OI 05-03 Tenant Violations — Offenses, Charging Instrument,
Due Process Provisions

at each of the HAS airports. In addition to each permanent Badging & Access Office at each HAS airport, the HAS Airport Security Section may, from time to time, specially and/or temporarily designate other locations. Hours of operation may vary depending on staffing and other considerations. Other names for this Office are the ID Badging & Access Office and/or ID Badging Office and/or Badging Office and/or other combinations thereof.

12. Company Offense: An offense that is chargeable against an organization, as opposed to, or in addition to, an individual. In a company offense, the sanction shall be performed by the highest ranking officer, project manager, station manager, superintendent, division manager, substantial owner or other management person of a rank similar to the foregoing that is directly connected with the business, operation, or project of the charged organization for the Airport or HAS facility related to the business, operation or project.

13. Controlled Areas: Those areas controlled by card readers, key lock, PIN pad or other access control device. These areas include, but are not limited to, certain parking areas, certain restricted areas, secured areas, sterile areas, apron areas, SIDA areas, AOA or any other area as defined in this O.I. or other applicable law, rule, regulation, Airport Security Plan, Security Program, lease, contract, agreement or by signage as off-limits to anyone not authorized to be in that area.

14. Current Picture: A picture of the applicant which is clear enough and closes enough in appearance so that a reasonable person can readily conclude that the document with the picture and the person presenting the document with the picture as being their own picture are one and the same person.

15. Disqualifying Condition: A pattern of criminal intent or activity as evidence by arrest records or convictions, irrespective of the type of the criminal offense(s) alleged or time period as determined by the Airport Security Manager. Termination of Badging/Access Rights or similar thereto, any airport within the 10 year period prior to seeking badging at an HAS Airport. (The term "Airport "as used herein shall mean any airport in the world)

16. Escort: To accompany or monitor and physically/visually control the activities of an individual who does not have unescorted access authority into or within a TSA Regulated Area as defined in the ASP.

17. Enforcement: The Airport Security and Airport Operations Sections are responsible for enforcement of safety, security and non-security related offenses described in this Operating Instruction and associated O.I.s.

18. Faithfully: Without variance, completely, devotedly, dependably.

19. HAS Airports: All land and improvements which are owned, leased, controlled and/or operated by the City of Houston under the auspices of the Houston Airport System at, or in conjunction with and/or support of, any one or more of the City owned airports.

20. Houston Airport System (HAS): City of Houston department responsible for operation of the City owned airports.

21. I.D. Badge Application and/or Application: Includes, but is not limited to, the Security Clearance Request form and the Security Clearance Renewal Request form, and any other application, clearance or request forms promulgated and used by HAS I.D. Badging Offices for the purpose of badging or issuance of access media.

22. Immediately or Immediate or Timely: Without delay, right there and then, time is of the essence, something to be accomplished before proceeding with other tasks, either business or personal.

OI 05-03   Tenant Violations – Offenses, Charging Instrument,
Due Process Provisions

23. Immediate Temporary Suspension: An individual's badging rights are immediately suspended as a result of behavior and/or action(s) that creates an unreasonable risk which may diminish the reputation, or the safety and/or security of the HAS community.

24. Key Set Symbol: The code number stamped on a controlled key used for identification purposes.

25. Media: Includes ID Badges, keys, PIN Numbers and other equipment and devices for identification and/or access.

26. Notice of Violation: Written notice on a form, or in a format, designated by HAS Airport Security, officially charging an individual or entity with a violation of Security, or non-security, laws, ordinances, policies, procedures, rules or regulations or any other laws, ordinances, policies, procedures, rules or regulations, including, but not limited to the Airport Security Plan, Organization Policy & Procedures (OPPS), Airport Operating Procedures (A.O.P.), Airport Security Plan and/or Operating Instructions (O.I.).

27. PIN Code: Personal Identification Number, normally identifiable to just one person, but which may, under some circumstances, be issued to more than one person, but often identifiable to a specific group of similarly engaged persons, needing access through a PIN controlled portal and normally used for access to Controlled Areas not covered by conventional locks or card readers.

28. Portal: Any opening through which an individual or object can enter into a place or exit from a place; a portal may be controlled or uncontrolled; a portal includes, but is not limited to, doors, windows, baggage conveyor doors, doorways, cutouts in walls and floors, gates, openings in fences, docks, driveways into and out of a building or area, conveyor openings, construction openings, etc.

29. Remedial Training: Such training as may be required by HAS of any individual or entity receiving a Notice of Violation.

30. Restricted Area: Areas not otherwise classified and which requires a grant of permission to enter and remain in from either HAS or a person or entity having greater rights of possession and control of the area than the person seeking to enter or remain therein.

31. Secured Area: A portion of an airport, specified in the Airport Security Plan, in which certain security measures specified in Part 1542 of 49 CFR Chapter XII are carried out.  This area is where aircraft operators and foreign air carriers that have a security program under Part 1544 or 1546 of 49 CFR Chapter XII enplane and deplane passengers and sort and load baggage and any adjacent areas that are not separated by adequate security measures. The Secured Area is more specifically delineated in attachments to the Airport's ASP.

32. Security Identification Display Area (SIDA): A portion of an airport, specified in the airport security program, in which security measures specified in Part 1542 are carried out. *The Secured Area is always a SIDA but a SIDA is not always a Secured Area; other areas of an airport besides the Secured Area may be defined as SIDA.* The Secured Identification Display Area is more specifically delineated in attachments to the Airport's ASP.

33. SIDA Video: Security training media, including, but not limited to, film,   videotapes, web-pages, CDs, and DVDs, required by TSA 49 CFR 1542 to be viewed by all of those who are granted access to the (SIDA), and required by HAS for all badged individuals, whether receiving SIDA access or not, prior to exercising the privileges of their Airport ID Badges, keys, PIN's or other access media or IDs.

34. Sponsor and/or Sponsoring Organization: This term, jointly and severally, includes the badging applicant's employer (including an Aircraft Operator subject to 49 CFR Part 1544 and governmental agencies normally exempt under 49 CFR 1542.209(m)(1)) as well as any other person, including the

entity that such other person is employed by, who is authorized by HAS to and does execute an HAS Badge Application in the signature block designated for the Sponsoring Company information and signature. Commonly referred to as "employer"

35. <u>Station Manager:</u> This term means the person that is the individual that is the top person in charge of the day to day overall operations of a company or organization at an HAS airport on the date of the issuance of an NOV. It is an affirmative defense that an individual receiving an NOV is not the individual meeting the foregoing definition, however, any individual claiming this affirmative defense must provide a sworn statement naming the correct individual in his/her company or organization that meets this definition.

36. <u>Sterile Area:</u> A portion of an airport defined in the airport security program that provides passengers access to boarding aircraft and to which the access generally is controlled by TSA, or by an aircraft operator under Part 1544 of 49 CFR Chapter XII or a foreign air carrier under Part 1546 of 49 CFR Chapter XII, through the screening of persons and property.

37. <u>Transportation Security Administration (TSA):</u> Division of the U.S. Department of Homeland Security responsible for administering Airport and other transportation venue Security Programs and/or its successor(s), if any, to one or more of its functions.

38. <u>Under-Badged:</u> An individual is under-badged for an area if the access rights granted by either the type of HAS I.D. Badge they have been issued or the access rights granted to that individual by HAS I.D. Badging is not of the level to permit the individual to be in or remain in an area without an escort.

39. <u>Violation:</u> The failure to, in whole or in part, strictly perform in a faithful and timely manner any duty or obligation, whether or not the duty or obligation is to do or not to do a general or specific matter imposed upon an HAS ID Badge holder by any federal, state or local, including Houston Airport System, law, ordinance, policy, procedure, rule or regulation.

40. <u>Inchoate Offense:</u> A type of crime completed by taking a punishable step towards the commission of another crime. The basic inchoate offenses are attempt, solicitation, and conspiracy.

D. All other words and phrases, not specifically defined in this section or otherwise, in this O.I., shall be defined as is commonly used and understood at HAS airports by HAS Management -- the interpretation of the HAS Director of Aviation, in his/her sole discretion, shall be final.


## VII. VIOLATIONS / OFFENSES / CONSEQUENCES

A. The violation, a/k/a, offense, whether by act or omission, of any Federal, State or Local, law, ordinance, policy, procedure, rule or regulation or any part thereof, whether such violation is due to intentional, knowingly, reckless or negligent conduct or a combination thereof is an offense and may result in a consequence. All offenses covered by this O.I. are strict liability offenses, meaning that a certain state of mind, *mens reas*, is not an element of the offense, unless otherwise specifically stated. Each I.D. Badge holder is hereby personally charged with the duty and obligation to know all laws, ordinances, policies, procedures, rules and regulations concerning safety, conduct, and/or security at an HAS airport or other HAS controlled facility. Any offense that is not specifically listed below shall be a violation of this OI and shall bear the consequences set forth herein.

B. Should any offense as committed, whether general or specific, cause or have the reasonable possibility of placing another person in danger of imminent bodily injury or death, or should the offense cause or have the reasonable possibility of placing property in danger of imminent damage in an amount greater than $ 5,000.00, or should the offense or violation result in a TSA or FAA investigation being opened

OI 05-03    Tenant Violations -- Offenses, Charging Instrument,
Due Process Provisions

and/or sanction imposed against HAS, or similar to a violation that resulted in a TSA or FAA investigation being opened and/or sanction being imposed against HAS within the immediately preceding three hundred sixty-five (365) calendar day period, then the offense may be enhanced by one (1) degree.

C. An individual committing or attempting to engage in an inchoate offense, including, but not limited to, conspiracy, aiding and abetting (either before or after the substantive offense), misprision (failure to report a violation of which the individual has reasonable knowledge to believe has occurred), shall be considered the same as if they had committed the offense and shall bear the consequences set forth herein.

D. A violator/offender is subject to the following sanctions, these sanctions are not exclusive, but are cumulative to other sanctions that may be imposed by other laws, ordinances, policies, procedures, rules and regulations -- the sanctions herein are mandatory and not subject to compromise, plea bargain, or reduction by a Hearing Panel/Hearing Officer or court:

E. Time calculations-Violations remain on an individual's record for seven hundred thirty (730) consecutive calendar days. The days will be calculated from the date of the violation.

1. Warning Notice:    Can be given in the sole discretion of the person issuing the NOV.  Two warnings in a three hundred sixty-five (365) consecutive calendar day period will result in the issuance of an NOV.  For the NOV to be a Warning, the Issuer must, at the time of issuance, precede the Violation Details with "WARNING ONLY".

2. Class I-1st Offense:    The violator's employer shall be responsible to retrain and educate the violator of the policies, procedures and regulations to prevent future violations.

Class I-2nd Offense: Sanctions for a second Class I violation sustained or uncontested NOVs excluding Warning NOVs are that the violator and the violator's direct line supervisor must attend the viewings at the same time and must also pass the tests that the Airport Security Manager and/or the Airport Manager (ASM if security related and AM if non-security related) of that airport has determined is appropriate for the specific offense, unless it is a safety violation related to driving on the AOA, in which case the violator must watch and pass the tests on both the SIDA video and the Driving on the AOA video and/or such other prerequisites for driving on the AOA as may then be currently in force and effect. There will be a $25.00 administrative fee for the testing of each NOV. The fee may be paid by either the Company or the individual (billed through rates and charges or directly at the badging office) who received the NOV. The fee is required to be made prior to the test being administered.

Class I-3rd Offense: Sustained or uncontested NOVs excluding Warning NOVs will result in a permanent loss of HAS ID Badge and Access Rights.

3. Class II Offenses:    May result in Immediate Temporary Suspension. Sustained or uncontested violations shall result in permanent loss of ID Badge and Access Rights at all HAS airports.

4. Company Offense:    An offense that is chargeable against an organization, as opposed to, or in addition to, an individual. In a company offense, the sanction shall be performed

---

OI 05-03   Tenant Violations -- Offenses, Charging Instrument,
Due Process Provisions

---

by the highest ranking officer, project manager, station manager, superintendent, division manager, substantial owner or other management person of a rank similar to the foregoing that is directly connected with the business, operation, or project of the charged organization for the Airport or HAS facility related to the business, operation or project. The sponsoring organization must prepare and submit a plan, acceptable to the Airport Security Manager, in the event the offense is related to security, or acceptable to the Airport Manager, in the event the offense is related to other than security, at the airport where the NOV was issued, for preventing the violator and all other employees and/or sponsored individuals from violating the specific law, ordinance, policy, procedure, rule or regulation in the future.   Such acceptable plan must be presented not later than the fourteenth (14th) calendar day from the date of the last day to file a Notice of Contest or from the date of the rendering of a decision by a Hearing Panel/Hearing Officer, whichever is later.

F.  For a 3rd violation of the same rule within 365 calendar days, by an Employer/Sponsoring Organization the head of security and/or safety for the Employer/Sponsoring Organization, and if no person is normally designated as such by the Employer/Sponsoring Organization, then an officer, project manager, station manager, superintendent, division manager, substantial owner or other management person of a rank similar to the foregoing of the Employer/Sponsoring Organization must prepare and submit a plan, acceptable to the Airport General Manager, or his/her designee, of the airport where the NOV was issued, for preventing the violator and all other employees and/or sponsored individuals from violating the specific law, ordinance, policy, procedure, rule or regulation in the future.  Such acceptable plan must be presented not later than the fourteenth (14th) calendar day from the date of the last day to file a Notice of Contest or from the date of the rendering of a decision by a Hearing Panel/Hearing Officer, whichever is later.

G.  Sanctions time calculations:

  1.  The violation sanctions for each violation will remain on an individual's record for seven hundred thirty (730) consecutive calendar days from the date of the violation.

  2.  The accrual of three Class I violations, sustained or uncontested NOVs excluding Warning NOVs by any employee during a seven hundred thirty (730) consecutive day period will result in immediate suspension of and permanent loss of their HAS ID Badge and Access Rights.

  3.  The accrual of one or more Class II violation, sustained or uncontested NOV by any employee will result in immediate suspension of and permanent loss of their HAS ID Badge and Access Rights.

H.  Offenses of Specific Violations:

  1.  Offenses of Specific Violations are attached hereto as "Attachment #2" and incorporated herein by reference, the same as if recited verbatim herein.

  2.  Other O.I.s can add additional Specific Violations without the need to amend this O.I.

  3.  The violation of any law, ordinance, policy, procedure, rule or regulation that is not specifically set forth in this O.I. or any other O.I. as to the sanction level is treated as a violation in accordance with the structure set forth in section VII.D above, however, if the violation results in an injury to or puts an individual in imminent danger of bodily injury, then such offense can be enhanced one (1) offense level and accrue the appropriate sanction points and monetary penalties.

OI 05-03   Tenant Violations -- Offenses, Charging Instrument,
Due Process Provisions

## VIII. THE CHARGING INSTRUMENT

A. As hereinabove stated, the administrative charging instrument for violations of this O.I. will be a Notice of Violation (NOV) by a person authorized pursuant to this O.I. to issue NOVs. The NOV will be on the form designated by the HAS Airport Security Section ID Badging Office. A copy of the current form is attached hereto as "Attachment # 1". The NOV form attached is for illustration purposes only.

B. The following are the only required information on the NOV, the lack of which would render the instrument invalid:

   1. The date of the offense;

   2. The approximate time of the offense;

   3. The name and HAS ID Badge number of the issuing party;

   4. The signature of the issuing party; and

   5. A general description of the offense.

C. Any other information requested on the form or placed upon the form is for the sole benefit of HAS and the presence or lack of presence thereof will not render the NOV invalid nor void nor voidable.

D. NOVs shall bear a box for checking off the three (3) letter designation of the airport where the NOV is issued and shall bear a number that is specific to that particular NOV.

E. An NOV determined to be invalid may be cured by issuance of a new and correct NOV; however, all dates for requesting hearings, etc. or compliance with sanctions shall then run from the date of issuance of the new and correct NOV.

F. The issuer of the Notice of Violation (NOV) after properly and fully completing the NOV will:

   1. At time of issuance, provide the pink copy to the violator;

   2. Place the manila cardstock copy in their Section's records in the manner directed by their Section management not later than the end of the issuer's shift the same day as the date of issue -- each Section authorized to issue NOV's will develop a filing system within their Section for the retention and rapid recall of NOV's issued by those in that Section;

   3. Deliver the white and green copies to the HAS Airport Security Badging Office at the airport where the NOV was issued;

   4. The Badging Office will retain the white copy in their Centralized NOV file and will send the green copy to the offender's employer or sponsor's Authorized Signatory Authority;

   5. The Badging Office will, within 48 hours of receipt (or the next business day if the Badging Office is closed for more than 48 hours), enter the violation into the Access Control Computer System and/or any alternative computer system that may be developed and designated by the Airport Security Manager or his/her designee; and

   6. The individual issuing the NOV shall retain the yellow copy in their personal file for use at any hearing.

---

OI 05-03   Tenant Violations -- Offenses, Charging Instrument,
Due Process Provisions

---

7.  The person investigating the alleged violation and/or issuing the Notice of Violation will, at a minimum, contact the violator's Direct Line Supervisor and advise him/her of the alleged violation and subsequent investigation.

G.  Failure to perform any of the instructions contained immediately above, set forth in Section VIII.F, will not invalidate the charging instrument nor serve as the basis for the dismissal of the charged violation.

H.  In the event that the violator leaves the scene prior to completion of the NOV or refuses to sign and/or take delivery of the NOV, good and sufficient notice and service is complete upon delivery of the green copy to the offender's employer or sponsor's Authorized Signatory Authority along with a note that service was not possible on the violator at the time of issuance – no explanation for the lack of service at time of issuance is required; however, any time limits start to run on the day of delivery to said employer or sponsor's Authorized Signatory Authority and any person listed with the ID Badging Office as an Authorized Signatory Authority may be served.

I.  If an offense is not witnessed by an authorized issuer of NOVs, an authorized issuer of NOVs may issue an NOV based upon the written statement of a direct witness or based upon a review of such documentation, including, but not limited to, video replays (including digital), photographs (including digital) and access control records or such other evidence, as they, in their sole discretion, conclude is probable cause to believe that an offense has taken place by one or more specific individuals.

J.  The Airport General Manager, or his/her designee, of the HAS Airport and/or other HAS facility where the offense occurred shall have the authority, in their sole discretion, to void any NOV issued by those under their line command.  All voids must be in writing, signed by the individual making the void and shall state thereon the date and reason for the voiding and the writing shall be attached by the HAS Badging Office to the White copy of the NOV and retained.   A voided NOV cannot be used for the enhancement of other violations.

K.  The Airport General Manager, or his/her designee, of an HAS Airport, and/or other HAS facility for which he/she is responsible, shall have authority to immediately suspend the HAS ID Badge of any person whom said Airport General Manager, or designee, deems, in his/her sole discretion, to be of imminent and/or continuing threat to the safety and/or security of the airport, meets disqualifying conditions, including, but not limited to, its assets (including, but not limited to, its reputation, employees, real (including improvements thereto) and personal property), tenants and concessionaires and/or their assets, contractors and/or their assets, airlines and their assets, the traveling public, the general public, dignitaries, the airport community, the airport and/or air transportation industry, the United States of America, the State of Texas and/or any of its political subdivisions, including, but not limited to the County of Harris and/or the City of Houston and/or their citizens and employees.

L.  The Airport General Manager, or his/her designee, shall also have the authority to, in his/her sole discretion, suspend any person not holding an HAS Authorized Badge from coming onto or remaining on HAS controlled property based on the same criteria as if they were an HAS ID Badge holder.

## IX.  CONTEST HEARING PROCESS

A.  All hearings held on an NOV shall be heard before a Hearing Panel of 1-3 Houston Airport System employees or a contracted Hearing Officer.  The Airport General Manager or designee shall appoint a Hearing Panel/Hearing Officer for the airport wherein the NOV was issued.  The appointed Hearing Panel members will be, at a minimum Pay grade 23 or higher.  There shall not be any matter such as an arraignment or motion docket.

B.  A failure to file a Notice of Contest within fourteen (14) calendar days from the date of issue of the Notice of Violation shall constitute a plea of No Contest and acceptance of the consequence of having committed the violation.

OI 05-03 Tenant Violations -- Offenses, Charging Instrument,
Due Process Provisions

C. Hearings shall be restricted to the question of whether or not the alleged violator committed the offense. The records of the Houston Airport System shall be prima facie (the burden to prove the records are wrong are upon the person who claims they are wrong) evidence of the sustaining of or entry of no contest to a prior violation.

D. There shall not be any hearing on any question of law, mitigation, probation or reduction of sanction. Any challenge as to questions of law shall be heard in a civil court of competent jurisdiction in Harris County, Texas, and such challenge must be filed by the alleged violator in such civil court not later than the thirtieth (30th) calendar day from the date the violation is sustained either by operation of rule or by written decision of the Hearing Panel/Hearing Officer. A challenge as to a question of law need not be proceeded by a Notice of Contest, the serving of a Citation and Petition shall be sufficient notice to HAS. HAS does hereby appoint the Assistant General Manager for Security as the agent upon which to serve process in, and only in, a challenge pursuant to this O.I.

E. An entry of "No Contest" shall not require presentation to a Hearing Panel/Hearing Officer and shall be entered in the violator's records in the HAS Badging Office by an employee thereof.

F. The following procedures will be the method of contesting a Notice of Violation by a holder of an authorized HAS ID Badge. The Notice of Contest challenging the factual validity that the violator committed a violation charged in the NOV must be made by the alleged violator or by their Authorized Signature Authority in writing, on a form available from the ID Badging Office, delivered to the Head Supervisor for ID Badging (or to his/her specific Designee for this purpose) by either hand delivery or receipted delivery. Delivery may not be made by e-mail or fax. A written receipt of delivery must be signed by the Head Supervisor for ID Badging (or by his/her specific Designee for this purpose) -- delivery to anyone else and acceptance by anyone else will not be effective delivery.

G. The Contest Hearing shall be in person at an office or conference room made available to the Hearing Panel/Hearing Officer and attendance of the alleged violator's Authorized Signature Authority with the alleged violator(s) is mandatory and will be at a time and date set by the Head Supervisor for ID Badging or designee. There shall not be any resets for the convenience of the Authorized Signature Authority or for the alleged violator, unless such reset is requested in writing, delivered to the Head Supervisor for ID Badging (or to his/her specific Designee for this purpose) by either hand delivery or receipted delivery, not later than five (5) calendar days prior to the date of the Hearing. Delivery may not be made by e-mail or fax. A written receipt of delivery must be signed by the Head Supervisor for ID Badging (or by his/her specific Designee for this purpose) -- delivery to anyone else and acceptance by anyone else will not be effective delivery. Failure to attend a scheduled Notice of Contest Hearing may result in a sustained verdict for the Notice of Violation being challenged. Any reset shall be at the discretion of the Hearing Panel/Hearing Officer.

H. All consequences of an alleged violation shall be suspended until the Hearing Panel/Hearing Officer has issued a written ruling or the time has passed for the filing of a Notice of Contest. When the alleged violation is a 3rd offense, there may be an Immediate Temporary Suspension and the alleged violator may follow the process for contesting the Immediate Temporary Suspension listed in Section X below, entitled "CONTEST HEARING PROCESS -- Immediate Temporary Suspension".

I. Any service required or desired to be made upon the alleged violator may be served directly upon the alleged violator or upon any Authorized Signatory Authority at his/her employer/sponsor.

J. The alleged violator and HAS shall have the right to compel any individual holding an HAS airport ID Badge to appear at any hearing before a Hearing Panel/Hearing Officer and failure to appear may result in the issuance of an NOV to the individual who did not appear. To invoke this right, the alleged violator must file a Requested Compelled ID Badged Witness List with the Head Supervisor for ID Badging (or to his/her specific Designee for this purpose) by either hand delivery or receipted delivery, not later than ten (10) calendar days prior to the date of the Hearing. The individual being compelled shall be entitled to a

total fee of $ 20.00; including mileage, for their attendance and said fees must be attached to the Requested Compelled ID Badged Witness List. Delivery may not be made by e-mail or fax. A written receipt of delivery must be signed by the Head Supervisor for ID Badging (or to his/her specific Designee for this purpose) -- delivery to anyone else and acceptance by anyone else will not be effective delivery. Such compunction shall not be available for Contest of Immediate Temporary Suspension and it shall be incumbent on the alleged violator to produce his/her own witnesses.

K.  At any hearing, all of which are administrative in nature, the Hearing Panel/Hearing Officer hearing the matter shall review the details of the offense, receive the testimony of the alleged violator, the person issuing the NOV, witnesses called by the alleged violator and witnesses called by HAS, the testimony of the alleged violator's Authorized Signature Authority (ASA) (if desired by the alleged violator, the ASA or HAS), and shall, in their sole discretion, make all decisions regarding the factual nature of the testimony, including, but not limited to, the weight to be given to the testimony of any party or witness, whether or not to believe the testimony, in whole or in part, apply the facts as determined by the person hearing the matter, in their sole discretion, to the elements of the offense and render a decision in accordance other provisions of this O.I.

L.  Each side shall be allowed five (5) minutes for an opening statement, thirty (30) minutes for examination of witnesses (this time includes, direct, cross, redirect, re-cross and rebuttal examination) and each party shall be allowed ten (10) minutes for a closing statement/argument.

M.  The Hearing Panel/Hearing Officer hearing the matter shall, not later than 24 hours after the hearing, issue and start delivery to the alleged violator's Employer and/or Sponsoring Organization and to the Assistant General Manager of Security, a written decision on the form then presently in use, save and except for a Contest of Immediate Temporary Suspension, the decision for which will be issued and be delivered at the conclusion of the hearing.

N.  The ruling of the Hearing Panel/Hearing Officer hearing the matter need not be detailed nor technical; a simple statement along the lines of "After hearing was held on XX day of XXXXX, 2XXX, the undersigned person(s) sitting as the Hearing Panel/Hearing Officer hearing the contest of NOV # XXXXX wherein the party alleged to have committed the violation of XXXXX XXXXXX finds that the charge in the NOV is (either sustained or overruled)." and the Hearing Panel/Hearing Officer shall sign and date the same and file the ruling with the appropriate ID Badging Office.

O.  Except as otherwise specifically stated, the burden of proof shall be upon HAS as to the ultimate question in each hearing; the ultimate question being did the alleged violator commit the offense.

P.  The standard of proof shall be preponderance of evidence.

Q.  All decisions as to matters of fact and applying the facts to the violated rule shall be in the sole discretion of the Hearing Panel/Hearing Officer.

R.  Formal rules of evidence shall not apply; copies of documents may be introduced providing that the Hearing Panel/Hearing Officer hearing the matter, in their sole discretion, after considering testimony and argument as to the trustworthiness or lack of trustworthiness of the copy, has been heard and considered.

S.  There shall not be any pre-hearing discovery allowed.

T.  At any hearing, whether an NOV is issued by Airport Security personnel or by Airport Operations personnel, the HAS representative, i.e., the person who shall present the case on behalf of HAS, shall be the person who wrote the NOV.

U.  In any and all hearings, either HAS or the alleged violator may invoke "the Rule", requiring that witnesses not be allowed to hear the testimony of other witnesses.

OI 05-03    Tenant Violations -- Offenses, Charging Instrument,
Due Process Provisions

V. In any and all hearings, all witnesses shall testify under oath or affirmation with penalty of perjury.

W. All hearings shall be either voice or video (with voice) recorded. The Badging Office will retain the recordings, records and will be provided to either HAS or the alleged violator upon written request.

X. There is not an automatic stay of sanctions when an individual appeals to a court of competent jurisdiction; the appealing party must seek and obtain injunctive relief for a stay.

Y. An alleged violator may not be represented by any individual or organization other than himself/herself at any hearing, save and except for an Attorney at Law duly licensed in the State of Texas.

Z. The decision of the Hearing Panel/Hearing Officer is final and non-appealable as to the facts and the sanctions imposed.

## X.  CONTEST HEARING PROCESS -- Immediate Temporary Suspension

A. In the event of an Immediate Temporary Suspension the same shall be timely contestable by Notice of Contest of Immediate Temporary Suspension, in writing, on the form available from the ID Badging Office and filed by the alleged violator or their Authorized Signature Authority with the ID Badging Office at the HAS Airport where the NOV was issued. A hearing, restricted solely as to the issue as to whether or not the continued presence of the alleged violator represents any level of danger to the airport or other individuals or entities at the airport shall be heard by the Airport General Manager of Security (or to his/her specific Designee for this purpose) not later than forty-eight (48) hours after the request for such a hearing is delivered to the ID Badging Office by either hand delivery or receipted delivery. Delivery may not be made by e-mail or fax. A written receipt of delivery must be signed by the Head Supervisor for ID Badging (or by his/her specific Designee for this purpose) -- delivery to anyone else and acceptance by anyone else will not be effective delivery.

B. There shall not be any hearing on any question of law, mitigation, probation or reduction of sanction. Any challenge as to questions of law shall be heard in a civil court of competent jurisdiction in Harris County, Texas.

C. Any service required or desired to be made upon the alleged violator may be served directly upon the alleged violator or upon any Authorized Signatory Authority at his/her employer/sponsor.

D. When the alleged violation is a 3rd Class I violation there may be an immediate suspension. The alleged violator may be instructed to immediately surrender and deliver their ID Badge to the Head Supervisor for ID Badging, or his/her specific Designee for this purpose, and may be instructed to immediately thereafter remove themselves from HAS owned or lease property and any presence on HAS owned or lease property during the period of suspension, save and except for the specific purpose of arrival or departure from the HAS airport on a flight, shall be trespass after warning and the violator shall be subject to arrest.. If it is necessary for the suspended party to visit their employer who is located on HAS owned or lease property at the employer's request, the suspended party must notify the Airport Communications Center's Security Dispatch at least sixty (60) minutes prior to coming upon HAS owned or lease property and must be and remain, at all times, under an escort, even in the public areas, from the employer. During this time the suspended party MAY NOT engage in any business on behalf of the employer or any other party -- the suspended party shall not be or remain on the HAS owned or leased property in excess of sixty (60) minutes.

E. The Assistant General Manager of Security or Operations (or designee) will render a decision which will be issued at the conclusion of the hearing.

F. The ruling of the party hearing a Contest of Immediate Temporary Suspension need not be detailed nor technical; a simple statement along the lines of "After hearing was held on XX day of XXXX, 2XXX, the

OI 05-03   Tenant Violations — Offenses, Charging Instrument,
Due Process Provisions

undersigned person hearing the Contest of Suspension due to NOV # XXXXX wherein the party alleged to have committed the violation of XXXXX XXXXXX finds (choose one of the following) (a) that the alleged violator presents an unreasonable risk and it is in the interest of the safety and/or security of the HAS community alleged violator be immediately suspended and the Immediate Temporary Suspension is sustained or (b) that the alleged violator does not present an unreasonable risk to the safety or security of the HAS community and the Immediate Temporary Suspension is overruled)." and the person hearing the matter shall sign the same.

G.   The burden of proof in a hearing on a Contest of Immediate Temporary Suspension shall be on the alleged violator to prove that the alleged violator's presence on HAS property does not present an unreasonable risk of safety and/or security of the HAS community.

H.   In, and only in, a Contest of Immediate Temporary Suspension the alleged violator, the alleged violator's employer and/or sponsor and the Assistant General Manager of Security and the Airport General Manager may, prior to the contest hearing, enter into an Agreed Order to remove the Immediate Temporary Suspension, subject to certain conditions being imposed upon the alleged violator and those conditions and the decision to enter into such an Agreed Order or not to enter into such an Agreed Order shall be in the sole discretion of HAS -- all of the foregoing parties must agree in order for there to be a valid Agreed Order and a lifting of the Immediate Temporary Suspension.

I.   All decisions as to matters of fact and applying the facts to the rule shall be in the sole discretion of the Assistant General Manager for Security (or designee).

J.   Formal rules of evidence shall not apply; copies of documents may be introduced providing that the Assistant General Manager of Security (or designee) hearing the matter, in their sole discretion, after considering testimony and argument as to the trustworthiness or lack of trustworthiness of the copy, has been heard and considered.

K.   HAS and/or the alleged violator may introduce written statements.

L.   An alleged violator may not be represented by any individual or organization other than himself/herself at any hearing, save and except for an Attorney at Law duly licensed in the State of Texas.

M.   The decision of the Assistant General Manager of Security is final and non-appealable as to the facts and the sanctions imposed.

## XI.  MISCELLANEOUS MATTERS

A.   Having an HAS ID Badge and/or access rights is not a right, but is a privilege, and persons so having such ID Badge and/or access rights are only entitled to the same for so long as they meet all qualifications, including, but not limited to, being employed with an authorized sponsor and not having been found to have committed a violation or violations which can result in the suspension of the ID Badge and/or access rights.

B.   In the event that acts or omissions could result in the issuance of an NOV for more than one offense and if an NOV is, in fact, issued for multiple offenses, all of the charged offenses may be adjudicated and accrue sanctions for each sustained violation; however, in any event, it shall not be a defense, nor a mitigating fact that an NOV could have been written for only one violation;

C.   The Airport General Manager, in his/her sole discretion, has the right to make reasonable and prudent changes, clarifications, modifications, additions and/or subtractions to this O.I. and to O.I. 05-02, provided that the changes do not result in the loss of any substantive rights to any individual or entity charged with a violation prior to the date of the changes, clarifications, modifications, additions and/or subtractions or within 30 calendar days of posting such revision in the I.D. Badging Office.

OI 05-03   Tenant Violations – Offenses, Charging Instrument,
Due Process Provisions

D.  In the event that any agency, department, or division named herein changes its name or its duties be assigned to another agency, department or division, such new name or the name of the successor/replacement agency, department or division shall be substituted in place of any such agency, department or division presently named herein and no amendment to this O.I. shall be required;

E.  In the event that any specifically enumerated law, ordinance, rule or regulation set forth herein shall be renumbered, modified or replaced, then the new number and/or law, ordinance, rule or regulation that, in the sole discretion of the Airport General Manager, deems to be appropriate for replacement of the present law, ordinance, rule or regulation shall be substituted in place thereof and no amendment to this O.I. shall be required, however, the replacement law, ordinance, rule or regulation so designated shall be posted in the ID Badging Office and shall be obtainable therefrom.

F.  Any and all violations listed within this document can be charged as company offense.

OI 05-03   Tenant Violations – Offenses, Charging Instrument, Due Process Provisions

ATTACHMENT #

## Notice Of Violation Sample
## (FRONT)

| | | | | |
|---|---|---|---|---|
| Sample | (To Fit on Approx. 5 x 7.5) | | (Printer to Reduce to Fit) | Sample |

**Houston Airport System**

Date of Issue:_____     **NOTICE OF VIOLATION**     NO. XXXXXXXXXX

☐ IAH     Date of Offense: _____ Time: _____ am or pm _____

☐ HOU     Name of Offender: _____
                            Last                   First           MI

☐ EFD     HAS Badge No.: _____ Expires: _____

Badge Sponsoring Organization: ...............................................................................................

Supervisor's Name: ................................................ Supervisor's Phone #: .............................

If Vehicle/Equipment Involved: _____
                 Type                 Make           Plate or ID Number

If No HAS Badge Driver's License #: _____ State: _____ D/O/B: _____

Offense Approximate Location: _____

Rule #: _____ SIDA  AOA  STERILE
                                               (Circle if Applicable)

Violation Details: _____

_____

_____

_____

_____     _____
Signature of Violator                            Signature of Issuer        Name Printed        ID Badge No.

White - Badging  Pink - Violator  Green – Badging  Yellow - Issuer  Manila - Division Mgmt. of Issuer

OI 05-03   Tenant Violations -- Offenses, Charging Instrument,
Due Process Provisions

ATTACHMENT 8 1

## Notice Of Violation Sample
## (BACK)

### YOU HAVE THE RIGHT TO CONTEST THIS NOV VIA A HEARING:

TO EXERCISE THIS RIGHT YOU MUST FILE A NOTICE OF CONTEST WITHIN FOURTEEN CALENDAR DAYS FROM THE
DATE OF ISSUE OF THIS NOV.

Failure to file the Notice of Contest within the aforesaid time will forever bar you from contesting the NOV and a plea of "No Contest" shall be
automatically entered into your records and you will be assessed the sanctions for such violation and you will accrue sanction points for possible
enhancement in the event of further violations, etc.

An entry of "No Contest" shall not require presentation to a Hearing Panel/Hearing Officer and shall be entered in the violator's records in the HAS
Badging Office by an employee thereof.

The following procedures will be the method of contesting a Notice of Violation by a holder of an authorized HAS ID Badge. The Notice of Contest
challenging the factual validity that the violator committed the violation charged in the NOV must be made by the alleged violator in writing, on a
form available from the ID Badging Office, delivered to the Head Supervisor for ID Badging (or to his/her specific Designee for this purpose) by
either hand delivery or receipted delivery. All Notice of Contests must include a complete statement as to the basis of the appeal as well as any
and all supporting documentation, including but not limited to witness statements. Delivery may not be made by e-mail or fax. A written receipt of
delivery must be signed by the Head Supervisor for ID Badging (or by his/her specific Designee for this purpose) -- delivery to anyone else and
acceptance by anyone else will not be effective delivery.

In the event of an immediate HAS ID Media confiscation, the Airport General Manager, or his/her designee, will review the relevant circumstances
to determine if the immediate confiscation should remain in effect or be over-ruled. This review will be completed and a ruling issued no later than
the following two (2) business days. The alleged violator retains the option to file a Notice of Contest within fourteen (14) calendar days of the
immediate confiscation.

At any hearing, all of which are administrative in nature, the Hearing Panel/Hearing Officer reviewing the matter shall review the Notice of Contest
documentation, to include details of the offense, the written appeal statement of the alleged violator, any applicable written witness statements, the
written report from the person issuing the NOV, and shall, in their sole discretion, make all decisions regarding the factual nature of the written
statements, apply the facts as determined by the Hearing Panel/Hearing Officer reviewing the matter to the elements of the offense and render a
decision in accordance with other provisions of this O.I.

The ID Badging Office will at time of filing of your Notice of Contest supply you with a copy of the hearing procedures and rules therefore. These
procedures and rules are also set forth in an Operating Instruction (O.I.) of the Houston Airport System - your badge sponsor and/or
employer should have a copy of the O.I., but you are personally responsible to make sure you are going by the most current version of
the O.I.

OI 05-03   Tenant Violations – Offenses, Charging Instrument,
Due Process Provisions

ATTACHMENT #2

## **Violations:**

## **CLASS I Notice of Violations:**

1. Failure to display valid HAS approved identification and/or ID Badge or HAS authorized ID Badge that is appropriate for the airport and the area in the prescribed manner, for special management and security purposes, specifically authorized in writing by either the Airport Security Manager or Director of Operations;

2. Failure to challenge someone in a controlled or restricted area who is not properly displaying an ID badge;

3. Possession of an HAS ID Badge that is substantially damaged, broken, faded, illegible;

4. Using a portal in a manner that has not been specifically authorized by HAS;

5. Failure to follow picketing/solicitation procedures anywhere on the Airport;

6. Smoking in an area where smoking is unauthorized and/or unlawful;

7. Violation of the Ten Foot Clear Zone, i.e., having an asset, including a disposed or abandoned asset, located closer than 10 feet to the perimeter fence line in areas where a 10 feet or greater distance is required, either inside or outside of the fence line – This may be a company offense for the company or organization whose assets are located in violation;

8. Failure to properly secure or dispose of Sensitive Security Information;

9. Displaying and/or using an ID Badge that has been reported lost, stolen, is expired or has been deactivated;

10. Failure to show an HAS authorized ID Badge appropriate for the airport and the area when challenged;

11. Piggybacking -- when one or more individuals, who are holders of an HAS ID Badge, follow another individual through a controlled access point without using their own ID Badge, Security Key or PIN Number (unless they are under proper escort procedures and have a legitimate need to move through that portal);

OI 05-03   Tenant Violations -- Offenses, Charging Instrument,
Due Process Provisions

12. Tailgating -- when one or more individuals, who are not holders of an HAS authorized ID Badge, or are holders of an HAS authorized ID Badge but do not have it on their person, follows another HAS ID Badged individual through a controlled access point -- the HAS ID Badged individual who does have their ID Badge with them must ensure the portal is secure prior to moving away and challenge the person, peacefully attempt to get them to leave the area, immediately notify Airport Security Dispatch, 281-230-1300 IAH or 713-845-6555 HOU and EFD and assist Airport Operations Officers in attempting to locate the tailgater;

13. Failure to challenge a Piggybacker or Tailgater -- a HAS ID Badged individual must ensure the portal is secure prior to moving away and challenge someone who is piggybacking. They shall wait while the piggybacker exits and returns through the portal properly using their own ID Badge, Security Key or PIN Number, if the piggybacker refuses to so comply a HAS ID Badged Individual must attempt to obtain the piggybacker's name, but whether they can obtain the name or not they must immediately report the same to Airport Security Dispatch, 281-230-1300 IAH or 713-845-6555 HOU and EFD and assist Airport Operations Officers in attempting to locate the piggybacker;

14. Failure to secure or follow stop and wait procedures any portal: which is required to be secure if not in use for operational needs, including, but not limited to a vehicle gate, pedestrian gate, door, and/or other portal;

15. Failure to use the "timed override" door function at a controlled portal where or when required;

16. Violation of Escort Procedures -- the escorting of one or more individuals (on foot or in a vehicle) into a restricted or controlled area and not strictly following the procedures related to proper identification, vehicle signs, and/or the requirement to remain with the individual/vehicle being escorted.  **Special Note #1** Individuals who have been issued an ID Badge but who do not have the badge in their possession (left it home, in vehicle, lost, etc.) may not be escorted through any security access point or in or into any restricted or controlled area -- to do so is an offense for both the escorter and the escortee. **Special Note #2** Individuals who have applied for, but have not yet been issued an HAS or HAS Authorized Badge, if even allowed at all in a restricted or controlled area,  must be at all times escorted and remain under strict escort and control of the escorting party at all times they are in a restricted or controlled area.

17. Failure to properly store and/or secure TSA prohibited items in a secured, restricted, or sterile area;

18. Failure to obey airside traffic controls, postings, or devices;

19. The violation of any other law, ordinance, policy, procedure, rule or regulation related to HAS and its security, airside safety, life safety or operations, including but not limited to business and field operations;

OI 05-03   Tenant Violations -- Offenses, Charging Instrument,
Due Process Provisions

20. Performance of any action in conflict with FAR Part 139, the Airport Certification Manual, and/or the AOA Driver Training program;

21. Failure to yield to an aircraft under either tow or taxiing;

22. Failure to yield to an emergency vehicle;

23. Operating a vehicle on the airside without airport authorization;

24. Conducting and/or permitting an unsafe fueling operation anywhere on the airport;

25. Failure to control, as opposed to failure to properly escort, personnel and equipment in a secured area ;

26. Failure to submit to or perform the requirements of sanctions, after the sanctions have become final under this O.I., within the time allotted in this O.I. -- is a separate offense;

27. Towing an excessive number of trailer devices;

28. Operating a ground vehicle on the airside without having required lights in proper working order and/or not having lights in operation;

29. Operating a ground vehicle on the airside without a valid driver's license;

30. Operating a vehicle on the airside without required markings;

31. Unauthorized vehicle on the Aircraft Operating Area;

32. Abandoning a disabled vehicle in a secure area;

33. Failure to report a "reportable" hazardous material spill anywhere on the airport;

34. Operating and/or permitting the operation, including the movement thereof, of improperly maintained fueling equipment anywhere on the Airport;

35. Improper cleanup and/or permitting improper cleanup of a hazardous material spill anywhere on the airport;

OI 05-03    Tenant Violations -- Offenses, Charging Instrument,
Due Process Provisions

36. Failure to follow prescribed engine run-up procedures;

37. Operating a ground vehicle in the secured area in excess of posted or published speed limit, in a reckless/unsafe manner and/or in excess of a safe speed limit considering the conditions of traffic (including, but not limited to pedestrian, aircraft, equipment and/or vehicular), driving surface, weather conditions, and/or exigent circumstances and;

38. Failure to display appropriate company signage on both sides of a vehicle or displaying or attempting to use any other expired permissive vehicle media, on an unattended vehicle parked in a "No Parking", "Tow Away", "Restricted" parking area, SIDA or AOA;

39. Allowing an individual to begin work in a controlled or secured area prior to successfully completing and submitting the required HAS badge application and process even if under escort.

## Class II Sanctions are:

**Permanent loss of ID Badge and Access Rights at all HAS airports. Violators of a Class II violation are subject to Immediate Temporary Suspension.**

### CLASS II Notice of Violations:

40. Displaying, loaning and/or permitting use of an HAS authorized ID Badge, assigned keys or PIN Number to or by another individual;

41. Failure or refusal to fully, completely, timely and truthfully cooperate -- including appearing when and at the place designated, with an investigation, audit or a proceeding by or instituted by or flowing from the acts of any Division of HAS. Misrepresentation or falsification, including but not limited to, intentionally or knowingly or recklessly leaving off any relevant information on any document delivered to HAS ;

42. Failure to surrender an individual's own ID Badge upon termination of employment to the individual's employer/sponsor/HAS ID Badging Office, or failure to surrender ID Badge upon request to anyone authorized to issue an NOV or a Law Enforcement Officer;

43. Intentionally or knowingly interfering with or failure to follow legitimate instructions from an employee of or contractor to HAS Airport Security or Airport Operations in the performance of their official duties;

44. Use, duplicate, or reproduce media or keys or authorizing access to any controlled or restricted area without written permission from either the ID Badging Office or, if the access device is not under the control of the ID Badging Office, the owner of the access device;

45. The failure to immediately notify the HAS ID Badging Office of an arrest for an HAS listed disqualifying crime;

46. Displaying and/or using an ID Badge that is not the violator's own badge;

47. Intentionally physically forcing a secured portal open instead of using an ID badge, PIN pad, or key;

48. Sabotaging, damaging, destroying a security or life safety device or system or any portion thereof; or disabling, bypassing, removal or modifying a security or life safety device or system or any portion thereof, without written permission of the Airport Security Manager or Director of Operations, or his/her designee -- *the actual existence of a life safety emergency is exception to the enforcement of this subparagraph, however, the burden of proof of the actual existence of a life safety emergency is upon the alleged violator -- this offense may also be a company offense, if any supervisor for the company had any knowledge that such may be occurring;*

OI 05-03    Tenant Violations -- Offenses, Charging Instrument,
Due Process Provisions

49. Causing a runway vehicle/pedestrian incursion and or entering the airside Movement Area without an Air Traffic Control Tower clearance and/or failure to obey instructions from the Air Traffic Control Tower;

50. Theft in any amount occurring upon HAS property;

51. Introducing or having a prohibited weapon or weapons (other than tools, knifes and other items that are essential and authorized for a work related purpose) or a firearm by an employee other than law enforcement officers and/or Security personnel specifically authorized to do so other in a restricted, secured or controlled area. Replicas or non-functional devices will be treated as prohibited weapons for the purpose of this policy.

52. Possession or consumption of alcoholic beverages or controlled substances on HAS property, other than by a person licensed or employed by a licensee in the course and scope of their employment for the beverage or controlled substance including if the violator is driving on the AOA, airside ramps and/or tug tunnels, or part of their primary work function involves driving in one or more of the foregoing areas and then offense is a Class II Violation;

53. Refusing, or failing to comply with a required inspection, search, or screening of an individual or an individual's accessible property.

54. An airline employee including, but not limited to, Flight Crew, Cabin Crew, mechanic or any other employee boarding or attempting to board an aircraft as a passenger or any individual not specifically designated or acting as an active crew member for that flight that accessed the sterile area through an access point other than a TSA screening checkpoint.

Southwest Airlines Co.
David A Mitchell
Senior Manager of Maintenance
HOU Technical Operations
713-845-2913
210-744-3648 (cell)

2019-75104 / Court: 055 **Southwest**

TO:   **All Tech Ops Employees**

FROM:   **David A Mitchell**

DATE:   **10 September 2019**

SUBJECT:   **Terminal Access**

Anyone intending on boarding an aircraft for a flight (work related or private) must enter the terminal through a Non-sterile area, the tunnel area into Baggage claim or Airport curbside, No exceptions.

Do not attempt to enter the sterile area, (terminal gate areas or the USO elevator area) in order to walk through the terminal to the TSA Security checkpoint with intent to board a flight.

Additionally, Hobby Airport security checkpoint at Serv-Air will not allow personal luggage to pass through the checkpoint as it would be entering into an uncontrolled environment.  All personal luggage must enter the Airport via curbside.

However, you may still access the food court, restaurants or any shops in the terminal through the USO elevator for purchases or services only.

**Failure to follow TSA and Hobby Airport Security rules may result in confiscation of your Hobby SIDA badge and/ or civil penalties.**

David A Mitchell
Senior Manager of Maintenance
HOU Technical Operations
713-845-2913
210-744-3648 (cell)


PETITIONER'S
EXHIBIT
B

# 2019-75104 / Court: 055



Transportation
Security
Administration

September 25, 2019

Jared S. Waldhoff, Southwest Airlines Mechanic
7601 Quiet Trace Ln.
Pearland, TX 77581

**WARNING NOTICE**
Re: Case No.: EIR# 2019HOU0148

Dear Mr. Waldhoff:

The Transportation Security Administration (TSA), at William P. Hobby (HOU), has completed an investigation into the circumstances surrounding an alleged violation of Transportation Security Regulations (TSR), Title 49 Code of Federal Regulations (CFR) § 154.105 Security responsibilities of employees and other persons.

Specifically, on September 05, 2019, at approximately 0730 hours, at William P. Hobby (HOU), a Transportation Security Inspector (TSI) Santiano was notified of a security incident in which you allegedly circumvented a security measure by accessing the airport terminal Sterile Area prior to submitting to the TSA Security Checkpoint to catch a flight.

This incident may have represented a failure on your part to comply with 49 Code of Federal Regulations (CFR) § 154.105, which requires that "No person may: Tamper or interfere with, compromise, modify, attempt to circumvent, or cause a person to tamper or interfere with, compromise, modify, or attempt to circumvent any security system, measure, or procedure implemented under this subchapter.  Violation of these regulations are subject to a Civil Penalty of up to $13,669.

In your letter of response, not dated, you indicated that "On Thursday the 5th of September I was flying out to Indiana. I worked on the night of the 4th. My work station is at the end of the terminal downstairs at gate 46, 47 and up. I park my vehicle at the Southwest hanger and take a van or truck over to the terminal after going through a guarded checkpoint between the hanger and terminal who checks the vehicles, scans our badges and checks bags. After I clocked out at 0728 on the 5th from work at the terminal I was on my way to the TSA checkpoint to be cleared to fly out. During my walk to the checkpoint I went through the badged door down by the USO office the same door we go up to get food or coffee while we are working and there was TSA personnel on the other side of the door. They greeted me and asked why I had a bag. I told them I was flying out that morning and I just got off work. He then asked to do a search of my bag so I let him and he cleared it. He then took my badge number and name down and said I could go. I did ask if this check was good enough for me to go ahead to my gate or not and he said no that I will still need to go to the checkpoint. He didn't tell me which way to go, whether I should turn around and go back out to get to the checkpoint or wait for an escort up to the checkpoint. I honestly had no idea that I couldn't go up through the terminal to get to the TSA checkpoint. I then left and went upstairs through the terminal out of the secured gate area and back in through the TSA checkpoint so I was able to fly out. Everything was fine so I headed to my gate and waited on my airplane to board. I boarded the plane and flew to Indianapolis."



PETITIONER'S
EXHIBIT
C

In view of the circumstances in this case and you submitting yourself and your property to TSA at the passenger screening checkpoint prior to boarding your flight, we have elected to send you this Warning Notice rather than seek a Civil Penalty. This Warning Notice is now a matter of record and part of your compliance history.  A Warning Notice is not a formal adjudication or a legal finding of the matter and, therefore, there are no rights to appeal this Notice.

A repeat incident of this type would be an extremely serious matter and would call for a more severe sanction, which may include the assessment of a Civil Penalty.

Individuals may be disqualified from TSA Preẞ® screening because they have committed a violation of a TSA security regulation. These violations include (but are not limited to) possession of a prohibited item at a screening location. The TSA Preẞ® disqualification process is separate from this regulatory matter and is handled by a different office. Individuals with questions concerning their TSA Preẞ® status should contact the TSA Contact Center at (866) 289-9673.

Sincerely,

Hector Vela, Federal Security Director
8876 Gulf Freeway, Suite 125
Houston, TX 77017

# 2019-75104 / Court: 055

To whom this may concern,

On Thursday the 5th of September I was flying out to Indiana. I worked on the night of the 4th. My work station is at the end of the terminal downstairs at gate 46, 47 and up. I park my vehicle at the Southwest hanger and take a van or truck over to the terminal after going through a guarded checkpoint between the hanger and terminal who checks the vehicles, scans our badges and checks bags. After I clocked out at 0728 on the 5th from work at the terminal I was on my way to the TSA checkpoint to be cleared to fly out. During my walk to the checkpoint I went through the badged door down by the USO office the same door we go up to get food or coffee while we are working and there was TSA personnel on the other side of the door. They greeted me and asked why I had a bag. I told them I was flying out that morning and I just got off work. He then asked to do a search of my bag so I let him and he cleared it. He then took my badge number and name down and said I could go. I did ask if this check was good enough for me to go ahead to my gate or not and he said no that I will still need to go to the checkpoint. He didn't tell me which way to go, whether I should turn around and go back out to get to the checkpoint or wait for an escort up to the checkpoint. I honestly had no idea that I couldn't go up through the terminal to get to the TSA checkpoint. I then left and went upstairs through the terminal out of the secured gate area and back in through the TSA checkpoint so I was able to fly out. Everything was fine so I headed to my gate and waited on my airplane to board. I boarded the plane and flew to Indianapolis.

I am truly sorry for this misunderstanding and will never happen again. I honestly did not know that I could not access the TSA checkpoint from that direction. If I had been told this I would have took the correct access way I am allowed. I would never ever fly out without going through the TSA checkpoint.

Thanks for your time,

Jared Waldhoff

SWA HOU Aircraft Maintenance Technician



# 2019-75104 / Court: 055

### Statement

September 5, 2019. On or about 0725 hours, I Lead Transportation Security Officer (LTSO) Tenaikenishian Turner & Expert Transportation Security Officer (ETSO) Maundale H. Monroe were in a secure area near the United Service Organization (USO) conducting Advanced Threat and Local Allocation Strategy (ATLAS). The counter Measure being conducted was "Open and Look/Physical Search".

At the time mentioned above, a Southwest aircraft maintenance employee, badge number 46349, Mr. Jared Waldhoff entered the asset door "Y-1002". I was conducting the secondary countermeasure which was "ETD of Hands" on an employee, when a southwest employee Mr. Waldhoff proceed through the door of our screening location, I noticed he had in his possession a medium sized carry-on suitcase bag. ETSO Monroe asked Mr. Waldhoff where was he going with the bag. Mr. Waldhoff stated "that he was going to catch a flight." ETSO Monroe asked him "if he had come in through Security Checkpoint." Mr. Waldhoff stated "that he was coming from the hangar." ETSO Monroe informed him that he was going to have to look inside his bag and that he was supposed to go through Security Checkpoint with his bag. ETSO Monroe asked Mr. Waldhoff "how did he get here from the hanger" and suggested he came over in one of the SWA modified golf carts. He stated, "golf cart, no we came over in a van." ETSO Monroe then stated, "in a van?" Mr. Waldhoff then stated, "yes in a van, we always come over in a van." Mr. Waldhoff asked ETSO Monroe, "since you are checking my bag here, do I still need to go through security?" ETSO Monroe stated "yes." Once completing the "Open Look/Physical Search" with negative finding, ETSO Monroe asked Mr. Waldhoff for his Security Identification Direct Access (SIDA) badge and recorded his information to forward this situation to the, Transportation Security Inspectors (TSI). Returned the SIDA badge to Mr. Waldhoff and he was allowed to continue. He headed towards the elevator then took the steps to the sterile area. At the time of his departure it was 0730.

ETSO Monroe and I LTSO Turner gathered our screening equipment and proceeded to our next counter measure location.

On or about 1016hrs, and with the use of Close Circuit Cameras. Mr. Waldhoff seen by me LTSO Turner in the lobby area entering the Central Checkpoint with his medium sized carry- on suitcase bag for screening at approximately 0736.

9 - 6 - 2019

PETITIONER'S
EXHIBIT
E

# 2019-75104 / Court: 055

### Statement

September 5, 2019. On or about 0725 hrs., I Expert Transportation Security Officer (ETSO) Maundale H. Monroe along with Lead Transportation Security Officer (LTSO) Tenaikenishi Turner, were in a secure area near the United Service Organization (USO) conducting Advanced Threat and Local Allocation Strategy (ATLAS). The counter Measure being conducted was "Open and Look/Physical Search".

At the time mentioned above, a Southwest aircraft maintenance employee, badge number 46349, Mr. Jared Waldhoff entered the asset door "Y-1002". As I saw Mr. Waldhoff proceed through the door of our screening location, I noticed he had in his possession a medium sized carry-on suitcase bag. I ETSO Monroe asked Mr. Waldhoff where was he going with the bag. Mr. Waldhoff stated that he was going to catch a flight. I asked him if he had come in through security. Mr. Waldhoff stated that he was coming from the hanger. I informed him that I was going to have to look inside his bag and that he was supposed to go through security with his bag. I asked Mr. Waldhoff how did he get here from the hanger and suggested he came over in one of the SWA modified golf carts. He stated, golf cart, no we came over in a van. I then stated, in a van? Mr. Waldhoff then stated, yes in a van. We always come over in a van. Mr. Waldhoff asked me, since you are checking my bag here, do I still need to go through security. I stated yes. Once completing the "Open Look/Physical Search" with no negative finding, I asked Mr. Waldhoff for his Security Identification Direct Access (SIDA) badge and recorded his information to forward this situation to the, Transportation Security Inspectors (TSI). Returned the SIDA badge to Mr. Waldhoff and he was allowed to continue. He headed towards the elevator then took the steps to the sterile area. At the time of his departure it was 0730.

LTSO Turner and I gathered our screening equipment and proceeded to our next counter measure location.

On or about 1016hrs, and with the use of Close Circuit Cameras. Mr. Waldhoff seen by LTSO Turner in the lobby area entering the Central Checkpoint for screening at 07:36:16

—END OF STATEMENT— 9-6-19


PETITIONER'S
EXHIBIT
E